JUSTICE RICE
concurring in part and dissenting in part.
¶47 I concur in affirming the District Court’s denial of the motion for a directed verdict, but dissent from the Court’s reversal of Spang’s conviction on the grounds that the District Court erroneously denied Spang’s motion to suppress his confession of September 19, 1999.
¶48 Spang was arrested on September 17,1999, after police implicated him in the deaths of Kristi Walker and Kevin Caplette. Later that day, Officer Olson and Deputy VanVleet left Havre and traveled to Great Falls, where Spang was detained, to question him, and arrived shortly after 11:00 p.m. After Spang waived his rights, the officers interviewed him for over an hour. By then, it was early in the morning of September 18, and the officers decided to conclude the interview, return to Havre, and continue the interview the next day, September 19. The officers informed Spang of their intentions and returned to Havre. The District Court found this interview was not unduly long or *69 grueling, and stated as follows about Spang:
Even though he is young, defendant has more experience with the legal system, and his rights, than most people. He is “street wise.” It is apparent from the tapes that he was not intimidated by his surroundings, was alert and aware of his situation. He was aware of his rights, was reminded of them, voluntarily waived his right to counsel and gave a statement on September 17-18, 1999.
¶49 The District Court then found that “as promised,” Officer Olson, on September 19, 1999, again made the lengthy trip from Havre to Great Falls, accompanied by Officer Tate, to continue the interview with Spang, at which time the conversation referenced by the Court in ¶ 7 occurred. After considering the evidence of this interview, the District Court found:
Upon review of the transcript and recordings in this matter, it is clear that Officer Olson did not “interrogate” the defendant after he requested an attorney. The defendant mentioned an attorney, and the officer asked some clarifying questions. Those questions were not reasonably likely to elicit an incriminatory response. In fact they did not. Nor did the question “Do you want to talk to us before you talk to a lawyer?” contain a measure of compulsion above and beyond that which is inherent in custody itself. There is no indication that Olson tried to talk defendant out of his decision.
¶50 In fact, Officer Olson was even more accommodating to Spang as their conversation continued. After Spang indicated that he would continue the interview, Olson did not, as the Court’s opinion states at ¶ 7, immediately commence interrogation of Spang. The Court omits the portion of the conversation in which Olson, after Spang indicated he would speak with them, once again asked Spang if he would like to have a lawyer before doing so. Spang responded by indicating that he would talk to the officers without a lawyer. These facts led the District Court to conclude:
It is not impermissible to inquire if a defendant wants a lawyer before he speaks. This is especially true in this particular instance as (a) Mr. Spang had already made a statement concerning the crimes and, (b) the way the statement of the defendant was phrased. Here, it was the defendant himself who decided to continue the interview and answer questions. ... Considering all of the circumstances, defendant waived his right to consult with a lawyer or have a lawyer present before speaking to the police on September 19,1999.
*70 ¶51 I agree. As the District Court found, Spang was “street wise” and well aware of what was necessary to invoke his rights. Yet, from his comment, Officer Olson could not know if Spang wanted a lawyer right then, or if he was expressing a general need for one to be appointed at some point. Thus, Olson asked a clarifying question. The Court would require that the officers, at the Defendant’s mention of the word “lawyer,” silently turn off the tape recorder, get up, gather their materials, walk out of the room, and drive back to Havre without so much as a question to clarify if that was the Defendant’s intention. Such a conclusion is neither a reasonable assessment of the circumstances here, nor a balanced rule for future cases, inviting the problem about which the United States Supreme Court has warned:
We decline ... [to] require law enforcement officers to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney. ... [A] rule requiring the immediate cessation of questioning “would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity,” Michigan v. Mosely [citation omitted], because it would needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present.
Davis v. United States (1994), 512 U.S. 452, 459-60, 114 S.Ct. 2350, 2355-56, 129 L.Ed.2d 362, 372.
¶52 Finding that Officer Olson’s questioning was appropriate under the United States Constitution and the Montana Constitution, and following this Court’s holding in the similar case of State v. Brubaker, I would uphold the District Court’s denial of the motion to suppress and affirm Spang’s conviction.